UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT RIZZO,

                Plaintiff,        Civil Action No. 17-12894
                                       Honorable David M. Lawson
                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]**

Plaintiff Robert Rizzo ("Rizzo") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Rizzo is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #15**) be **GRANTED**, Rizzo's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Rizzo was 49 years old at the time of his alleged onset date of February 13, 2014, and at 5'8" tall weighed approximately 175 pounds. (Tr. 46, 147, 171). He completed the eleventh grade but had no further education. (Tr. 49, 172). Over the years, he worked as a truck driver and in a warehouse, before stopping work when he injured his back on February 13, 2014. (Tr. 50, 171-72). He now alleges disability primarily as a result of back pain, neck pain, and diabetes. (Tr. 171).

After Rizzo's application for DIB was denied at the initial level on February 17, 2015 (Tr. 89-92), he timely requested an administrative hearing, which was held on April 28, 2016, before ALJ Crystal White-Simmons (Tr. 40-76). Rizzo, who was represented by attorney Randall Mansour, testified at the hearing, as did vocational expert Amelia Shelton (the "VE"). (*Id.*). On June 14, 2016, the ALJ issued a written decision finding that Rizzo is not disabled under the Act. (Tr. 10-21). On July 12, 2017, the Appeals Council denied review. (Tr. 1-5). Rizzo timely filed for judicial review of the final decision on September 1, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Rizzo's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.[1]

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to

---

[1] Because Rizzo only challenges the ALJ's evaluation of his physical impairments, the Court will confine its discussion to evidence relating to these conditions.

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Rizzo is not disabled under the Act. At Step One, the ALJ found that Rizzo has not engaged in substantial gainful activity since February 13, 2014 (the alleged onset date). (Tr. 12). At Step Two, the ALJ found

3

that he has the severe impairments of cervicalgia with cervical radiculopathy, lumbago with lumbar radiculopathy, and diabetes mellitus. (*Id.*). At Step Three, the ALJ found that Rizzo's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Rizzo's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and frequent reaching. (*Id.*).

At Step Four, the ALJ found that Rizzo is not capable of performing his past relevant work. (Tr. 19). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Rizzo is capable of performing the jobs of toll collector (400,000 jobs nationally), marker (161,000 jobs), and routing clerk (59,000 jobs). (Tr. 20-21). As a result, the ALJ concluded that Rizzo is not disabled under the Act. (Tr. 21).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D. Analysis

As set forth above, the ALJ determined that Rizzo has the RFC to perform a limited range of light work. (Tr. 15). In his motion, Rizzo argues that this RFC finding is not supported by substantial evidence because it "falls short of including the entirety of [his] documented

limitations."[2] (Doc. #14 at 10). The Court disagrees.

To begin with, the ALJ thoroughly explained the rationale for her RFC determination, citing and discussing the evidence of record that relates to the limitations she imposed. (Tr. 15-19). For instance:

- The ALJ gave great weight to the opinion of Kevin Keogh, D.O., who placed Rizzo on "modified" duty of lifting no more than 20 pounds. (Tr. 18 (citing Tr. 226)). Specifically, the ALJ noted that, "due to the cervical and lumbar issues, noted throughout the record, [Rizzo] would be incapable of work at anything greater than the light level of exertion." (*Id.*).

- The ALJ also gave great weight to the opinion of state agency physician Tariq Mahmood, M.D., who opined that Rizzo can perform light work with occasional postural functioning. (Tr. 18-19 (citing Tr. 77-85)). Specifically, the ALJ noted that these limitations are supported by the medical evidence of record, including Rizzo's diagnoses of cervicalgia and lumbago with radiculopathy. (*Id.*).

- The ALJ gave minimal weight to a medical source statement completed by Faiz Rahman, M.D. on January 23, 2015, noting that the severe restrictions imposed by Dr. Rahman – including no sitting or standing for more than five minutes at a time, no lifting over five pounds, and no pushing or pulling – appeared "to be based solely on [Rizzo's] subjective reports." (Tr. 18 (citing Tr. 327-30)). Specifically the ALJ noted that there were no objective observations from Dr. Rahman's physical examination that would support the sitting or standing restrictions, as clinical abnormalities were limited to the right upper extremity. (*Id.*).

- Similarly, the ALJ gave little weight to the January and February 2016 opinions of Fuad Rahimee, M.D., who indicated that Rizzo can perform no lifting, pushing, or pulling with the left shoulder. (*Id.* (citing Tr. 643, 646)). Specifically, the ALJ

---

[2] Rizzo begins his argument by asserting that the ALJ "made an erroneous Step Five determination that is unsupported by the substantial weight of the evidence; the burden is on the Commissioner at Step 5." (Doc. #14 at 10). But, because Rizzo is not arguing that the hypothetical question posed to the VE differs from his RFC, his only cognizable challenge is to the ALJ's RFC determination, not to the hypothetical question at Step Five. *See Seiler v. Comm'r of Soc. Sec.*, 2018 WL 992062, at *5 (E.D. Mich. Feb. 1, 2018) ("Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in reality a veiled attack on the ALJ's underlying RFC finding." (internal quotations omitted)). Thus, contrary to Rizzo's assertion, he retains the burden of proving a more restrictive RFC than that assessed by the ALJ. *See* 20 C.F.R. § 404.1512(a) (explaining that claimant bears the burden of proof at Steps One through Four).

noted that this opinion is at odds with Rizzo's own statements during that same time period that his neck and arms were not bothering him, and that he had no numbness or tingling in his upper extremities. (*Id.* (citing Tr. 638, 641)).

- Additionally, the ALJ made a negative finding regarding Rizzo's subjective symptoms, finding that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). In explaining this finding, the ALJ noted that Rizzo's "treatment has been essentially routine and conservative in nature" and that it is not the type of treatment "one would expect for a totally disabled individual." (Tr. 19).

Rizzo does not challenge the weight assigned to any of these medical opinions, nor does he challenge the ALJ's evaluation of his subjective complaints. Thus, any such challenges are waived. *See, e.g., Seiler v. Comm'r of Soc. Sec.*, 2018 WL 992062, at *5 (E.D. Mich. Feb. 1, 2018) (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)). Rather, Rizzo argues only that the "medical evidence of record clearly supports a disabling RFC," pointing to certain physical examination findings and diagnostic reports from March 2014 to October 2015. (Doc. #14 at 11, 12). Specifically, Rizzo claims that these "objective findings support a finding of disability" in the sense that they demonstrate that he "cannot sit or stand/walk for the required periods demanded in competitive work situations."[3] (*Id.* at 12-13).

In advancing this argument, Rizzo first cites to medical records from January 2014, close in time to when he injured his back at work. (*Id.* at 12 (citing Tr. 224, 225, 235, 249)). A January 15, 2014 physical examination revealed tenderness to palpation over the mid-thoracic

---

[3] Because the only specific challenge Rizzo makes to the ALJ's RFC finding relates to his alleged limitations in sitting and standing/walking (Doc. #14 at 12-13), any other challenge to the RFC is waived; Rizzo has failed to identify any additional restrictions that might be necessary to accommodate his physical limitations. *See, e.g., Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in his RFC assessment…. Instead, he leaves it to the Court to determine which further restrictions might be appropriate. Berry's underdeveloped argument should be found waived.") (emphasis in original).

7

and lower lumbar regions, but the remainder of his musculoskeletal exam was unremarkable, and he was diagnosed with only a thoracic strain. (Tr. 224-25). Similarly, records from late January and early February 2014 reflect complaints of increased pain affecting his lower back, but it was noted that, with physical therapy, Rizzo was tolerating increased sitting and driving. (Tr. 235, 249). Rizzo next cites to a March 17, 2014 MRI of his thoracic spine, which showed a probable hemangioma within the T7 vertebral body and an additional lesion within the right T6 transverse process.[4] (Doc. #14 at 11 (citing Tr. 257)). But, as the ALJ noted (Tr. 16), this MRI also showed normal thoracic alignment with intact thoracic vertebral heights and well-preserved thoracic discs, as well as no evidence of focal disc herniation, spinal stenosis, or neural foraminal narrowing (Tr. 257).

Additionally, Rizzo references physical therapy records from May 2, 2014, which he claim reveal the following functional deficits: "an inability to work; exacerbating pain with reaching overhead and sitting; and waking up from pain 4-5 times per night." (Doc. #14 at 12 (citing Tr. 277)). But these "deficits" were merely Rizzo's own subjective complaints, which the ALJ did not fully credit (a finding that Rizzo does not challenge, as explained above). (Tr. 16-19). Rizzo also cites a June 3, 2014 report from Medicus Pain and Spine, which he asserts "noted back pain, upper abdominal pain, and right lower extremity pain." (Doc. #14 at 11 (citing Tr. 258)). While this is true, at the same visit, Rizzo reported a 50 percent decrease in his usual pain, saying he was gradually improving and that the episodes of radiating pain into his right abdominal region were decreasing in frequency with time and therapy. (Tr. 258). And, while Rizzo also cites physical examination findings from a visit to Fawad Rizvi, D.O. on September

---

[4] The MRI suggested a CT exam for "further characterization of this bone lesion." (Tr. 257). A March 31, 2014 CT exam confirmed this was likely a hemangioma and showed no acute thoracic spine abnormality. (Tr. 255-56).

15, 2014, including decreased trapezius bulk on the right, positive facet loading maneuvers, and limited range of motion of the upper extremities bilaterally in abduction (Doc. #14 at 11 (citing Tr. 321-22)), the Commissioner correctly points out that Dr. Rizvi did not recommend any functional limitations, and the only reference to sitting or standing in those treatment records is Rizzo's own subjective complaint of worsening pain with prolonged sitting or standing. (Doc. #15 at 11 (citing Tr. 321-22)).

Rizzo next recites findings from his January 23, 2015 visit to Dr. Rahman, who found, on physical examination, atrophy of the muscles over the superior aspect of the right scapula, limited range of motion of the right shoulder, and that Rizzo was unable to raise his right arm above his shoulder. (Doc. #14 at 12 (citing Tr. 327)). As noted above, however, Rizzo has not specifically challenged the ALJ's RFC assessment as it relates to the limitation to frequent reaching and, thus, any such challenge is waived. *See Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016). Moreover, even if the Court were to review the ALJ's decision to limit Rizzo to frequent reaching, this restriction is supported by substantial evidence. Indeed, in declining to impose a greater restriction, the ALJ specifically discussed Dr. Rahman's findings (Tr. 17 (citing Tr. 327)), noting that a more restrictive reaching limitation (i.e., occasional reaching with only the right upper extremity, as opined by state agency physician Tariq Mahmood, M.D. (Tr. 77-85)) was not supported by the evidence. (Tr. 19). In arriving at this conclusion, the ALJ acknowledged that the October 30, 2015 EMG report – which Rizzo cites – showed right and left cervical radiculopathy.[5] (Tr. 17-18, 601). However,

---

[5] In his motion, Rizzo also points to a July 21, 2015 complaint of numbness in the right elbow; however, notes from this same visit seem to indicate that this stemmed from a "shooting pain when he got [an] IV during [a] recent hospitalization," as opposed to an ongoing condition. (Doc. #14 at 12 (citing Tr. 625)). Rizzo also cites September and November 2015 examinations that revealed slight decreased sensation to light touch in his lateral right elbow and ulnar

the ALJ also noted that, on December 7, 2015, Rizzo indicated that his neck and arms were not bothering him, and, on January 8, 2016, he denied any numbness or tingling in his upper extremities. (Tr. 18 (citing Tr. 638, 641)). Rizzo has not challenged the ALJ's evaluation of these medical records, and they provide substantial evidence supporting the ALJ's limitation to frequent reaching bilaterally.[6]

In summary, Rizzo asks the Court to second-guess the ALJ's evaluation of the medical evidence in determining his RFC. But that is not an appropriate role for this Court. *See Ashby v. Comm'r of Soc. Sec.*, 2017 WL 9482460, at *9 (E.D. Mich. July 31, 2017) ("The Court will neither re-weigh the evidence, ignore substantial evidence relied upon by the ALJ, nor second-guess an ALJ's findings which are well within the reasonable outcomes supported by the record as a whole."). And, although Rizzo cites to various medical records in support of his argument, for the reasons stated above, he has failed to sustain his burden of showing that he requires a more restrictive RFC than that imposed by the ALJ. *See Hammer v. Comm'r of Soc. Sec.*, 2014 WL 1328190, at *2 (E.D. Mich. Mar. 31, 2014) ("Although another factfinder perhaps could have reviewed the record and reached a different conclusion as to [what] limitations [] should be incorporated into Plaintiff's RFC, it suffices that the determination made by the ALJ here is supported by substantial evidence in the record."); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating need for more restrictive RFC).

---

forearm, as well as thoracic paraspinal tenderness. (*Id.* (citing Tr. 633, 636)). None of these records document any specific functional limitations, however, and thus do not undermine the ALJ's RFC finding.

[6] Rizzo also cites medical records noting diagnoses of type 2 diabetes and kidney stones (Doc. #14 at 12 (citing Tr. 510, 538)), but it is not at all clear how these diagnoses affect his RFC, as the records cited do not identify any specific functional limitations. Moreover, as the ALJ noted, following June 2015 hospital visits for kidney stones, there was no further treatment for this condition. (Tr. 13). And, as for diabetes, the ALJ noted that Rizzo was doing "great" after his medications were tweaked; his sugars were well-controlled with three shots daily; and he denied burning in the feet, numbness, vertigo, dizziness, or lightheadedness. (Tr. 17 (citing Tr. 511)).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #15**) be **GRANTED**, Rizzo's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: June 11, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

11

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2018.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager